**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| MICHAEL DOYLE,<br><br>               Plaintiff,<br>    vs.<br><br>F/V INFINITE GLORY, O.N. 981164,<br>HER ENGINES, MACHINERY,<br>APPURTENANCES, etc. *IN REM*,<br><br>    vs.<br><br>BRYAN R. HOWEY, *IN PERSONAM*,<br><br>               Defendants. | 3:12-cv-00179-TMB -JDR<br><br>**<u>ORDER GRANTING DEFENSE MOTION TO SET ASIDE DEFAULT</u>**<br><br>(Docket No. 25) |

**I. Introduction**

On March 3, 2013, the defendant, Bryan Howey (Howey), filed a motion to set aside the default entry at Docket 25, along with an Answer to plaintiff's complaint at Docket 28. The plaintiff, Michael Doyle (Doyle), filed his response in opposition on April 10 at Docket 29. Howey filed his reply on April 14 at Docket 31.

At issue is whether the court should set aside the default entry that was entered in favor of Doyle at Docket 20. In order for this court to address whether defense counsel should compensate the plaintiff for the cost of additional motions practice, the plaintiff must file a separate motion. For the reasons stated below, the *Motion to Set Aside Default* is HEREBY GRANTED. The *Answer* filed at Docket 28 is HEREBY ACCEPTED.

## II. Relevant Facts and Procedural History

During the summers of 2010 and 2011, Howey, the owner and operator of the F/V Infinite Glory, hired Doyle as the skiff operator aboard the vessel. The parties entered into an oral contract, which provided that Doyle would receive a "fair share." However, Howey argues that the agreed upon fair share is the equivalent of 7% of the value of the catch, less actual food and fuel, and Doyle contends that the agreed upon fair share is 10% of the value fo the catch, less actual food and fuel.

Customary practice is for the payment to be made in the form of two checks. The first check follows reasonably soon after delivery of the fish to the buyer. The second check, referred to as a retro check, follows months later. The retro check is paid contingent on the quality of the fish. If the fish appear to be handled well and are top quality the crew would earn $.04/lb on top of what was paid in the first check.

Doyle claims that he never received a retro check for both the 2010 and 2011catch. Howey contends that he paid Doyle an additional $.04/lb in the first

check because he knew the buyer would pay top quality for the fish, which negated the necessity to pay Doyle a retro check for the 2010 catch. Howey also claims that he does not owe Doyle a retro check for the 2011 catch because the buyer did not pay an additional $.04/lb for the catch.

Doyle retained Seattle counsel, Steven V. Gibbsons (Gibbsons), Gibbsons & Associates, who sent a demand letter to Howey on March 30, 2012. The letter alleged claims of lien totaling $9,000. As a result, Howey retained present counsel, James W. McGowan (McGowan), to address the demand letter, which he did on April 09, 2012. Howey was billed by McGowan for the letter. The letter stated that Mr. Howey was participating in the Sitka Sound sac roe fishery that should conclude in the following two weeks. Gibbsons responded to the letter on April 11. After April 11, no further correspondence occurred between the parties.

On August 29, 2013, Gibbsons contacted the Anchorage firm Hedland, Brennan & Heideman who filed and served the Complaint. Howey was served on or about January 2, 2013. Howey immediately dropped the paperwork off at McGowan's office. However, McGowan was out of town because he unexpectedly had to fly to Hawaii after his fiancé suffered serious injuries as a result of a bicycling accident. McGowan flew to Hawaii on November 24, 2012 and did not return until February 21, 2013.

While out of the office, McGowan's staff would scan incoming documents onto his computer, which he could remotely access. The Complaint was

scanned and McGowan had a chance to view the document. However, McGowan never spotted the document, and, thus, never filed an answer. It was not until March 27, 2013 that Howey contacted McGowan to inquire as to the status of the case. A subsequent Pacer inquiry revealed that an *Entry of Default* as to Bryan R. Howey was entered on January 24, 2013.

### III. Legal Analysis

*A. The Defendant has Shown Sufficient Good Cause to Set Aside the Default*

Federal Civil Rule 55(c) states, " The court may set aside an entry of default for good cause, and it may set aside a default judgement under Rule 60(b)." The Ninth Circuit declared the following about the distinction between an entry of default and a default judgment:

> The different treatment of default entry and judgment by Rule 55(c) frees a court considering a motion to set aside a default entry from the restraint of Rule 60(b) and entrusts determination to the discretion of the court. As a practical matter, however, when considering a motion to set aside a default entry, the parallels between granting relief from a default entry and a default judgment encourage utilizing the list of grounds for relief provided in Rule 60(b), including considering whether a defendant has a meritorious defense.

Hawaii Carpenters' Trust Funds v. Stone, 794 F.2d 508, 513 (9th Cir. 1986). Although not required, the court will consider Rule 60(b) in its analysis.

Rule 60(b)(1) allows a court to set aside a final judgment based upon "excusable neglect." The determination of what conduct constitutes excusable

neglect is an equitable one, which takes into "account all relevant circumstances surrounding the party's omission." <u>Pioneer Inv. Serv. Co. v. Brunswick Ass'n. Ltd.</u>, 507 U.S. 380, 395 (1993). The standard is to be applied liberally and all doubt is to be resolved in favor of the defaulting party. <u>O'Connor v. Nevada</u>, 27 F.3d 357, 364 (9th Cir. 1994). The court's discretion is especially broad when "it is an entry of default that is being set aside, rather than a default judgement." <u>Brady v. United States.</u>, 211 F.3d 499, 504 (2000). In order to set aside a final judgment under Rule 60(b), the court must consider whether: (1) The plaintiff would be prejudiced by setting aside the default; (2) the defendant has a meritorious defense; and (3) the defendant's culpable conduct led to default. <u>Falk v. Allen</u>, 739 F.2d 461, 463 (9th Cir. 1984).

In the present situation, the prejudice suffered by Doyle is relatively low. Doyle argues that he is prejudiced because setting aside the entry of default will cause unreasonable delay, add unnecessary expense and cause memories, witnesses and documents to become unavailable. However, Doyle's claims are unpersuasive for the following reasons.

First, Howey filed his Answer 63 days after it was originally due. Such a delay, while inconvenient, is not prejudicial considering that the *in rem* vessel, which Howey no longer owns, has not been served. Second, any financial hardship caused by filing additional motions will be cured because defense counsel is likely subject to sanction for his failure to respond to the complaint. <u>See</u> Subsection B.

Finally, while there exists an increased risk that the delay potentially caused memories, witnesses and documents to become unavailable, factors beyond the control of either party contributed to the delay. For example, four months passed from when the complaint was filled and the time Howey was served. Additionally, defense counsel was dealing with an emergency in Hawaii when the paperwork was brought to his office. Given that all factual inferences are resolved in favor of the defaulting party, the prejudice suffered by the Doyle does not rise to the level necessary to deny Howey's motion.

      Howey raised meritorious defenses to all allegation set out in the complaint. The diagram on page nine of Docket 25 clearly lists Howey's defenses to all of the allegations alleged in the Complaint. Howey is correct that he alone has the burden of demonstrating a meritorious defense necessary to set aside the default. In order to satisfy the requirement, the movant must make some showing that he will prevail. <u>Stone</u>, 794 F.2d at 513. In his affidavit, Howey swears that Doyle was paid in full for his services, no retro monies received would have changed the payout, and Doyle was paid the highest wage payed in Sitka. Even though Howey did not submit other documents in support of his affidavit, such a showing is not required at this state of the proceedings. Howey's statements in his affidavit are more than general denials or simple assertions because his statements specifically address the underlying facts of the case. Given the courts obligation to resolve all doubt in favor of the defaulting party, Howey's meritorious defense must stand.

The final consideration the court will take into account is whether the defendant's culpable conduct led to default. Here, there exists no devious, deliberate, willful, or bad faith failure to respond by the defendant. Mr. McGowan summation of his own conduct sheds light on Howey's conduct. He wrote:

> Mr. Howey's attorney falls on his sword before this court and the opposing party. And for good reason. As noted in the Affidavit of James W. McGowan, he acknowledges that: (a) the Complaint was timely delivered to his office; (b) that based on past practices, Mr. Howey should have been able to rely on counsel to deal with the issues raised in the Complaint; (c) that staff at the office duly scanned the Complaint into the computer; and (d) that counsel simply did not spot the document in the scanned document queue.

Docket 31, at 7. Based on past dealings with his attorney, it appears that Howey acted in good faith to bring the Complaint to the attention of his attorney. McGowan's failure to deal with the issue should not prevent Howey from presenting his case in court.

### B. Plaintiff Must File a Separate Motion to Address Whether Defense Counsel Should be Ordered to Pay the Cost of the Additional Motions Practice

The proper cure for McGowan's failure to respond to the Complaint in a timely manner is for defense counsel to pay for the additional motions practice out of pocket. Brandt v. American Bankers Ins. Co. of Florida, 653 F.3d 1108, 1110 (9th Cir. 2011). However, in order for the court to address this issue, the plaintiff must file a separate motion. D. Ak. L. R. 7.1.

## IV. Conclusion

The *Motion to Set Aside Default* is granted. The amount of prejudice suffered by the plaintiff is low. The defendant raised meritorious defenses to all of the plaintiff's claims. Finally, it was the attorneys conduct, not the defendant's conduct, that lead to the delay. Therefore, the *Motion to Set Aside Default* is HEREBY GRANTED and the *Answer* filed at Docket 28 is HEREBY ACCEPTED.

DATED this __18th__ day of June, 2013, at Anchorage, Alaska.

    /s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge